Thomas R. POOR BEAR, Plaintiff,

v.

Tom NESBITT, in his official capacity as Superintendent of the Nebraska State Patrol, Terry E. Robbins, in his official capacity as Sheriff of Sheridan County, Nebraska, Robert Logsdon, in his official capacity as Chairman of the Nebraska Liquor Commission, Richard Coyne, in his official capacity as a member of the Nebraska Liquor Commission, Rhonda Flower, in her official capacity as a member of the Nebraska Liquor Commission, Defendants.

No. 8:03CV261.

United States District Court, D. Nebraska.

Jan. 29, 2004.

Bruce G. Mason, Nebraska Advocacy Services, Lincoln, NE, for Plaintiff.

Melanie J. Whittamore–Mantzios, Wolfe, Snowden Law Firm, Jennifer Tomka, Attorney General's Office, Lincoln, NE, for Defendants.

Terri M. Weeks, Boucher Law Firm, Lincoln, NE, for Terry E. Robbins, In his official Capacity as Sheriff of Sheridan County, Nebraska.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

### I. FACTUAL ALLEGATIONS

This is an action brought pursuant to 42 U.S.C. § 1983 against the Superintendent of the Nebraska State Patrol, the Sheriff of Sheridan County, Nebraska, and three members of the Nebraska Liquor Control Commission, all in their official capacities. The plaintiff, Thomas R. Poor Bear, alleges that his civil rights were violated on June 26, 1999, and July 3, 1999, when the defendants restricted his ability to participate in prayer marches with other Lakota Native Americans from the Pine Ridge Reservation in South Dakota to the city of Whiteclay, Nebraska. Poor Bear requests declaratory and injunctive relief and damages related to the defendants' alleged pattern, practice, custom, and policy of depriving him of his constitutional rights to free speech, assembly, association, and to petition the government; free exercise of his Lakota religious practices; travel between states; protection from harm; and equal enforcement of criminal and regulatory laws, in violation of the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution.

Poor Bear also claims that President Theodore Roosevelt's January 25, 1904, Executive Order withdrawing a 50–square–mile piece of land known as the Whiteclay Extension from the Pine Ridge Reservation and placing the land in the public domain constituted an unconstitutional taking without just compensation in violation of the Fifth Amendment. Finally, Poor Bear alleges that the State of Nebraska has been unjustly enriched with sales tax income from the sale of alcohol in the Whiteclay Extension, and the defendants "as agents of the State of Nebraska in association with those owners and operators of the liquor stores in the Whiteclay Extension have misappropriated and converted to their own use the value of the land which belonged to the Plaintiff and the Lakota for their communal protection." (Filing 1, Complaint ¶ 60.)

The defendants have filed motions to dismiss (filings 19 & 22) the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1), (2), and (6). I shall grant the defendants' motions.

"In considering a motion to dismiss, we must assume that all the facts alleged in the complaint are true. The complaint must be liberally construed in the light most favorable to the plaintiff." *Holden Farms, Inc. v. Hog Slat, Inc.,* 347 F.3d 1055, 1059 (8th Cir.2003). Therefore, the facts for purposes of considering the defendants' motions to dismiss are those alleged in Poor Bear's complaint (filing 1).

### A. The Parties

Plaintiff Poor Bear is an Ogalala Lakota residing in the Pine Ridge Reservation. Defendant Tom Nesbitt is the Superintendent of the Nebraska State Patrol and is charged with overall responsibility for the formulation, implementation, and supervision of policies, practices, and procedures of the Patrol, including policies governing

crowd control, political dissent, and political protest. Defendant Terry Robbins is the Sheriff of Sheridan County, Nebraska, who is responsible for the formulation and implementation of policies, practices, and procedures of the Sheriff's Department in Sheridan County, including the unincorporated village of Whiteclay and Highway 87. Defendants Robert Logsdon, Richard Coyne, and Rhonda Flower are members of the Nebraska Liquor Control Commission who are charged with the powers and duties set forth in the Nebraska Liquor Control Act, Neb.Rev.Stat. Ann. §§ 53–101 to 53–1,122 (LexisNexis 2002).

## B. Background

In 1882, President Chester Arthur, by Executive Order, removed a 50–square–mile piece of land from the public domain of Nebraska and added it to the adjacent Pine Ridge Reservation in order to create a "no sale of alcohol buffer zone" in response to the instability that had been created by 19th century "whiskey ranches" along what is now Highway 87 in Sheridan County, Nebraska. According to Poor Bear's complaint, the sole purpose of these "whiskey ranches" was to "trade in whiskey and to exploit the Lakota's known susceptibility toward alcohol abuse, misuse, and addiction." (Filing 1, Complaint ¶ 14.)

Congress subsequently recognized and ratified this buffer zone (the "Whiteclay Extension") in various acts, one of which allegedly provided that the Whiteclay Extension could only be removed from the Pine Ridge Reservation upon a specific finding that it was not needed for the use and protection of the Lakota on the Reservation. Poor Bear alleges that in 1904, President Roosevelt removed the Whiteclay Extension from its protected status and placed it back into the public domain without making a finding that the Extension was no longer needed for the use and protection of the Lakota. According to

the complaint, "alcohol exploitation" returned to the Whiteclay Extension within one year of President Roosevelt's action, where it continues today in the unincorporated village of Whiteclay, Nebraska. Whiteclay is located in Sheridan County, Nebraska, along Highway 87 and consists of a convenience store, auto parts store, salvage yard, and four packaged liquor stores. The complaint alleges that Whiteclay's liquor stores sell "millions of cans of beer to the Lakota who travel by foot or vehicle, the short distance down Highway 87 from the dry ... [r]eservation where the sale of alcohol is prohibited." (Filing 1, Complaint ¶ 13.)

Poor Bear's complaint states that over 50 unsolved murders have occurred on the Pine Ridge Reservation since the mid–1970s, and six "unattended deaths" have occurred in Whiteclay within the past five years. One of these unsolved murders is that of the plaintiff's brother, who was found with another murdered Lakota man on June 8, 1999, in a roadside ditch along Highway 87, a few hundred yards north of Whiteclay and within walking distance of the Pine Ridge Reservation.

## C. The Marches and Prosecution

On June 26, 1999, plaintiff Poor Bear and other American Indian Movement leaders organized and conducted a prayer service in memory of the murdered Lakota men. During the service, more than 2,000 Lakota walked down Highway 87 from the Pine Ridge Reservation to just north of Whiteclay where the two murdered Lakota men were found. During the service, the participants prayed and engaged in the traditional Lakota religious practices of burning tobacco and sage.

The Lakota marchers then proceeded into Whiteclay to "petition the governmental authorities for the capture and prosecution of the murderers of [the two Lakota

men]." (Filing 1, Complaint ¶ 26.) According to Poor Bear's complaint, "a disturbance ensued and certain acts of vandalism by the intoxicated individuals" who had been drinking outside Whiteclay's liquor stores occurred, thereby denying the plaintiff and other prayer marchers the "opportunity to present their petitions to the governmental authorities." (Filing 1, Complaint ¶ 26.)

Prior to the June 26 march, the plaintiff and other tribal leaders had requested that defendant Robbins and the Sheridan County Sheriff's Department protect the Lakota marchers from intoxicated individuals outside Whiteclay's liquor stores who could cause "trouble or disrupt[ ] the religious and political purposes of the march." (Filing 1, Complaint ¶ 25.) Poor Bear alleges that defendants Robbins and Nesbitt failed to so protect the Lakota marchers; knew and tolerated the custom and practice of individuals drinking alcohol outside Whiteclay's liquor stores in violation of Nebraska law; and that the defendants' failure to protect the plaintiff and the Lakota marchers and enforce Nebraska law deprived the plaintiff of his constitutional rights.

After the June 26, 1999, prayer march, defendant Nesbitt directed his Nebraska State Patrol officers to blockade Highway 87 to prevent plaintiff and other Lakota from traveling on the highway. Shortly thereafter, Highway 87 reopened and plaintiff Poor Bear and hundreds of Lakota held a prayer service on July 3, 1999, on the Pine Ridge Reservation, after which they walked on Highway 87 to the site where the murdered Lakota men were found. As Poor Bear and the marchers then approached Whiteclay, "they were met by a sizeable force of Nebraska State Patrol Officers in riot gear with SWAT teams, snipers with automatic weapons on rooftops, attack dogs in reserve and a helicopter hovering overhead directed by the

Defendant Nesbitt and the Sheridan County Sheriff's Department deputies directed by Defendant Robbins." (Filing 1, Complaint ¶ 28.)

Despite the fact that at no time on July 3, 1999, did Poor Bear or the other marchers engage or threaten any act of violence, Nebraska State Patrol officers and Sheridan County Sheriff's deputies—as directed by Nesbitt and Robbins—threatened Poor Bear and the other march participants with arrest if they crossed the "arbitrary yellow line" the officers had placed across Highway 87. (Filing 1, Complaint ¶ 29.) Poor Bear and eight other leaders of the prayer march continued to "peacefully walk into the cordon of State Patrol Officers in riot gear" and Sheridan County Sheriff's deputies, after which agents and employees of the State Patrol and Sheriff's Department arrested Poor Bear and the other prayer march leaders. At Nesbitt's and Robbins' direction, agents and employees of the State Patrol and the Sheridan County Sheriff's Department agreed to release Poor Bear and the other eight leaders on their own recognizance in lieu of posting bail if the assembled Lakota would "relinquish their religious ceremony, stop speaking, cease the assembly and their efforts to petition their government, disperse, and return to the Pine Ridge Reservation." (Filing 1, Complaint ¶ 31.) The Lakota agreed and returned to the Reservation.

Poor Bear alleges that by specific order of defendants Nesbitt and Robbins, he and his fellow marchers were prevented from entering Whiteclay and petitioning the local governmental authorities of their grievances, including lack of criminal prosecution of the murderers of the two Lakota men; unenforced liquor violations in Whiteclay; and the belief that Whiteclay belonged to the Lakota.

On July 26, 1999, Poor Bear and the eight other prayer march leaders were formally charged in Sheridan County with one count of Obstructing a Peace Officer by Violently Using Force, which carries a penalty of one year of imprisonment, and one count of Failure to Obey a Lawful Order of Law Enforcement, punishable by three months' imprisonment and a $500.00 fine.[1] Poor Bear was found guilty in the County Court of Sheridan County, Nebraska, of Failure to Obey a Lawful Order of Law Enforcement and was fined $200.00 plus court costs.

Poor Bear's June 12, 2002, judgment of conviction[2] declared Poor Bear guilty of violating Neb.Rev.Stat. § 81–2008 because "[t]he evidence at trial established beyond a reasonable doubt that officers of the State Patrol gave [a lawful] order, that Mr. Poor Bear knew that such an order had been given; and that Mr. Poor Bear disobeyed that order by intentionally crossing a police line preventing entry to the main street." (Filing 20, Ex. 1.) In the context of an earlier motion to dismiss the criminal complaint against Poor Bear, the Sheridan County Court on November 22, 2000, determined that "the order given by law enforcement officers, for the marchers to not enter the main street through the business district of Whiteclay, was a lawful order." (Filing 20, Ex. 4, Journal re: Question of Lawful Order.) In support of its conclusion, the county court stated:

In this case, because of the actions of members of the protest march that occurred the week before, and because of information received, all of which made them believe that there was a great likelihood of violence and destruction in Whiteclay, the law enforcement officers decided to close the main street through the business district. No one was prevented from entering the State of Nebraska, or from marching, or consulting together, or from petitioning the government, except that the march was not permitted to enter the main street of the business district of Whiteclay. There is no evidence that the marchers would have been prevented from marching around or demonstrating in the area of Whiteclay, from making speeches, or from exhorting any passers-by that might have been in the area.

(Filing 20, Ex. 4 ¶ 4.)

## II. DISCUSSION

### A. THE DEFENDANTS' GROUNDS FOR DISMISSAL

The defendants argue that this matter must be dismissed on several grounds: *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); the statute of limitations; Eleventh Amendment immunity; and failure to state a claim upon which relief may be granted.

---

1. Although not clearly stated in the complaint, the charged offenses were presumably those contained in Neb.Rev.Stat. Ann. §§ 28–906 (LexisNexis 2003) (obstructing peace officer) and 81–2008 (Lexis 1999) (failure to obey lawful order).

2. For the details relating to Poor Bear's criminal conviction, I have considered the undisputed state court records set forth in defendant Robbins' evidence index. (Filing 20.) Consideration of these undisputed facts, although outside the complaint, to decide *Heck*

*v. Humphrey* and related issues is permitted under Fed.R.Civ.P. 12. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1364, at 468–69 (1990) (validity of defenses under Fed.R.Civ.P. 12(b)(1) to 12(b)(5) is "rarely apparent on the face of the pleading and motions raising them generally require reference to matters outside the pleadings."). In addition, the plaintiff specifically alleges in his complaint that he was found guilty of Failure to Obey a Lawful Order of Law Enforcement in Sheridan County Court. (Filing 1, Complaint ¶¶ 34 & 35.)

### 1. Heck v. Humphrey

■ The defendants assert that insofar as a judgment in favor of Poor Bear on any of his claims would necessarily imply the invalidity of his criminal conviction or sentence, such claims are not cognizable under section 1983 because Poor Bear has not alleged that his conviction or sentence has "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Poor Bear admits that "an award of *damages* for Poor Bear's conviction itself, or the arrest and other actions by the Defendants on the specific date of arrest, are barred by *Heck*"; however, the plaintiff argues that *Heck* does not bar his section 1983 claims for constitutional violations occurring both before and after the date of his arrest, constitutional violations continuing into the present, or his claims for equitable relief. (Filing 31, Pl.'s Br. Opp'n Defs.' Motions to Dismiss, at 12 (emphasis in original).)

As the plaintiff agrees, *Heck* applies to Poor Bear's complaint to the extent that a judgment in favor of Poor Bear would necessarily imply the invalidity of his criminal conviction or sentence for violating Neb.Rev.Stat. § 81–2008, which makes it a Class III misdemeanor to "fail[ ] or refuse[ ] to obey any ... lawful order of the superintendent or any of the subordinate officers or employees of the Nebraska State Patrol." The question then becomes whether *Heck* applies only to Poor Bear's claims for monetary relief. In order to award Poor Bear any of the relief he seeks—whether it be monetary, declaratory, or equitable—this court must find the same conduct unconstitutional. Put simply, it would "elevate form over substance" to limit *Heck's* applicability to Poor Bear's claim for monetary damages when the same allegedly unconstitutional conduct forms the basis for all forms of Poor Bear's requested relief. *Yeazizw v. City of Edina*, 2003 WL 1966285, at *11 (D.Minn. Apr.28, 2003) (finding *Heck* applicable to plaintiff's § 1983 claims for money damages and injunctive relief and discounting plaintiff's argument that *Heck* only applies to prisoners) (citing *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir.1996) (indicating that, under *Heck*, court disregards form of relief sought and instead looks to essence of plaintiff's claims)). *See also Harvey v. Horan*, 278 F.3d 370, 375 (4th Cir.2002) (*Heck* applies to claims for damages, as well as to claims for injunctive relief that necessarily would imply the invalidity of plaintiff's conviction); *Lawson v. Engleman*, 2003 WL 21300347, at *1 n. 2 (10th Cir.2003) (*Heck* applied to plaintiff's claims for monetary, declaratory, and injunctive relief; *Heck* should apply when the concerns underlying *Heck* exist).

Poor Bear's June 12, 2002, judgment of conviction in the County Court of Sheridan County, Nebraska, found Poor Bear guilty of violating Neb.Rev.Stat. § 81–2008 because "[t]he evidence at trial established beyond a reasonable doubt that officers of the State Patrol gave [a lawful] order, that Mr. Poor Bear knew that such an order had been given; and that Mr. Poor Bear disobeyed that order by intentionally crossing a police line preventing entry to the main street." (Filing 20, Ex. 1.) In the context of an earlier motion to dismiss the criminal complaint against Poor Bear, the Sheridan County Court on November 22, 2000, determined that "the order given by law enforcement officers, for the marchers to not enter the main street through the business district of Whiteclay, was a lawful order." (Filing 20, Ex. 4, Journal re: Question of Lawful Order.) In support of its conclusion, the county court stated:

In this case, because of the actions of members of the protest march that occurred the week before, and because of information received, all of which made them believe that there was a great likelihood of violence and destruction in Whiteclay, the law enforcement officers decided to close the main street through the business district. No one was prevented from entering the State of Nebraska, or from marching, or consulting together, or from petitioning the government, except that the march was not permitted to enter the main street of the business district of Whiteclay. There is no evidence that the marchers would have been prevented from marching around or demonstrating in the area of Whiteclay, from making speeches, or from exhorting any passers-by that might have been in the area.

(Filing 20, Ex. 4 ¶ 4.)

Therefore, to the extent judgment in favor of Poor Bear on any of his claims would render his criminal conviction or sentence for violating the lawful order of law enforcement officers (i.e., order prohibiting marchers from entering the main street through the business district of Whiteclay) invalid, his section 1983 claims for monetary, declaratory, and injunctive or equitable relief are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), because Poor Bear has not shown that his criminal conviction or sentence has been reversed on appeal, expunged by executive order, or otherwise declared invalid.[3]

## 2. Statute of Limitations

■ Because Poor Bear's complaint was filed on July 3, 2003, the defendants assert that the plaintiff's claims arising before July 3, 1999, are barred by Neb.Rev.Stat. § 25–207, the four-year statute of limitations applicable to section 1983 actions in Nebraska.

The law of the state in which a § 1983 action is brought provides the appropriate statute of limitations. The U.S. Supreme Court held in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), that the characterization of a § 1983 action shall not vary from case to case for purposes of selecting the applicable statute of limitations. The Court

---

3. Relying on concurring and dissenting opinions in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Spencer v. Kemna*, 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), some courts have stated that a plaintiff's failure to establish the invalidity of his conviction pursuant to *Heck* will not bar a section 1983 action asserted by that plaintiff if he is not "in custody" such that the remedy of habeas corpus would be unavailable to him, as is the case here (i.e., plaintiffs who have completed their prison terms, probation, or parole and plaintiffs who were never incarcerated but were only fined or had their driver's license suspended). *See Leather v. Eyck*, 180 F.3d 420, 424 (2nd Cir. 1999); *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 396 n. 3 (6th Cir.1999); *Ways v. City of Lincoln*, 2002 WL 1742664, at *9 10 (D.Neb. 2002). Declining to rely on dicta from concurring and dissenting opinions, other courts have concluded that *Heck* would bar section 1983 claims in such circumstances. *Figueroa v. Rivera*, 147 F.3d 77, 80–81 (1st Cir.1998); *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir.2000). Although the parties do not appear to have considered this issue, I shall comply with the Supreme Court's admonition that lower federal courts follow directly applicable precedent, even if weakened by statements in later Supreme Court decisions, and leave to the Court "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). *See also Agostini v. Felton*, 521 U.S. 203, 217, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (view of five concurring and dissenting Justices calling for reconsideration of particular case "cannot be said to have effected a change in ... law"; rather, the Court must examine and analyze whether such case was actually eroded by subsequent cases).

directed that each state must apply only one statute of limitations to all § 1983 actions. The Court in *Wilson* also stated that for purposes of selecting one statute of limitations, § 1983 actions shall be characterized as personal injury actions because recovery is based upon a finding that a party has suffered injury to his personal rights.

We have not specifically determined which of Nebraska's statutes of limitations applies to § 1983 actions. The U.S. Court of Appeals for the Eighth Circuit considered the issue and held that Neb.Rev.Stat. § 25–207 (Reissue 1988) applies to § 1983 actions. *Bridgeman v. Nebraska State Pen,* 849 F.2d 1076 (8th Cir.1988); *Epp v. Gunter,* 677 F.Supp. 1415 (D.Neb.1988). We agree. Section 25–207 requires that actions for an injury to the plaintiff's rights be filed within 4 years from the date on which the action accrued.

*Bauers v. City of Lincoln,* 245 Neb. 632, 514 N.W.2d 625, 634 (Neb.1994) (parallel citations omitted); Neb.Rev.Stat. Ann. § 25–207 (LexisNexis 1995) (actions for injury to rights of plaintiff must be brought within four years).

While strict application of Neb.Rev.Stat. § 25–207 would bar any of the plaintiff's claims accruing before July 3, 1999, Poor Bear argues that this court should apply the "continuing violation doctrine" and hold that his claims accruing before July 3, 1999, are also timely. Poor Bear reasons that because the defendants have continually violated his constitutional rights, all of his claims are timely because his lawsuit was filed within the four-year limitations period dated from the last occurrence of wrongdoing—that is, the events of July 3, 1999.

While this court and the Eighth Circuit Court of Appeals have recognized the existence of the continuing violations doctrine in the context of employment disputes,

*Mustafa v. State of Nebraska Dep't of Corr. Servs.,* 196 F.Supp.2d 945, 957 (D.Neb.2002), the parties have not cited, nor has the court found, any binding authority applying the doctrine in a factual context similar to that presented here. Indeed, Plaintiff's counsel agrees that "case law applying the relevant Nebraska statute of limitations is sparse on the issue of the continuing violations doctrine." (Filing 31, Pl.'s Br. Opp'n Defs.' Motions to Dismiss, at 48.)

Therefore, I find that the continuing violations doctrine is inapplicable and any of Poor Bear's claims accruing before July 3, 1999, shall be dismissed as barred by the applicable statute of limitations, Neb. Rev.Stat. § 25–207.

### 3. Eleventh Amendment Immunity— Claims Against State Defendants in Their Official Capacities

#### (a) Federal Constitutional Claims

The plaintiff sues the Superintendent of the Nebraska State Patrol and three members of the Nebraska Liquor Control Commission (the "State defendants") in their official capacities only. A suit against a state actor in his official capacity is barred by the Eleventh Amendment unless: (1) the state has unequivocally waived its sovereign immunity and has consented to suit in federal court, or (2) Congress has unequivocally, by legislation, abrogated state immunity in order to effectuate the provisions of the Fourteenth Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 97–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Burk v. Beene,* 948 F.2d 489, 492–494 (8th Cir. 1991).

It is well-settled that the State of Nebraska has not waived its immunity

from liability in civil rights actions. *Winnie v. Clarke,* 893 F.Supp. 875, 880 (D.Neb.), *reconsideration granted on other grounds,* 893 F.Supp. at 881 (D.Neb.1995); *Wiseman v. Keller,* 218 Neb. 717, 358 N.W.2d 768 (Neb.1984) (holding that Neb. Rev.Stat. § 20–148 (Reissue 1977)[4] did not waive Nebraska's sovereign immunity as to actions brought in federal court under 42 U.S.C. § 1983 to protect rights under the Contract Clause of the U.S. Constitution and property interests protected under the Fourteenth Amendment); *Patteson v. Johnson,* 219 Neb. 852, 367 N.W.2d 123 (Neb.1985) (same); *Williams v. State of Missouri,* 973 F.2d 599, 600 (8th Cir. 1992) (Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983).

Therefore, to the extent the plaintiff asserts federal claims against the State defendants in their official capacities for money damages, the Eleventh Amendment to the United States Constitution applies and, therefore, bars recovery against the state defendants in their official capacities. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■■ However, the Eleventh Amendment does not bar a federal lawsuit which seeks to prospectively restrain a state official from acting in violation of the Constitution or federal law because such relief would simply prohibit the state official from doing that which he has no legal right to do. *Ex parte Young,* 209 U.S. 123, 159, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (Eleventh Amendment did not prohibit in-

junction against Attorney General of Minnesota to conform future conduct of his office to the Fourteenth Amendment). *See also Verizon Maryland Inc. v. Public Serv. Comm'n,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (in determining whether *Young* doctrine avoids Eleventh Amendment bar to suit, court must conduct "straightforward inquiry" regarding whether complaint alleges ongoing violation of federal law and seeks prospective relief); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 281, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) ("An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction" unless the suit implicates special sovereignty interests, as in this case which was the functional equivalent of a quiet title action involving navigable waters); *Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (judgment enjoining state and county officials from failing to process benefit applications for federal-state aid within time limits set by federal regulation deemed analogous to prospective relief awarded in *Ex parte Young*); *Campbell v. Arkansas Dep't of Correction,* 155 F.3d 950, 962 (8th Cir. 1998) (director and assistant director of state agency could be sued in official capacities under section 1983 for prospective injunctive relief). The United States Supreme Court has reiterated, however, that the *Ex parte Young* doctrine is narrow, applies only to prospective relief, and "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

---

4. This statute imposed liability upon "persons"—as further defined by statute—for injuries caused by subjecting another to "the deprivation of any rights, privileges, or im-

munities secured by the United States Constitution." *Wiseman v. Keller,* 218 Neb. 717, 358 N.W.2d 768, 771 (Neb.1984).

Poor Bear's complaint clearly requests prospective injunctive relief for violations of the Constitution. (Filing 1, Complaint, at 19 ¶¶ C–D.) Accordingly, I shall grant the State defendants' motion to dismiss as to Poor Bear's federal claims for money damages and declaratory relief (i.e., declaration that State defendants violated federal law in the past), thereby limiting the plaintiff's federal claims against the State defendants to claims for prospective injunctive relief.

### (b) State–Law Claims for Conversion and Unjust Enrichment

■ The Eleventh Amendment bars Poor Bear's claims against the State defendants for conversion and unjust enrichment in their entirety, regardless of whether the relief sought is prospective or retroactive. When a plaintiff alleges that state officials have violated state law, as in this case,

> the entire basis for the doctrine of Young and Edelman disappears. A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that Young and Edelman are inapplicable in a suit against state officials on the basis of state law.

Pennhurst, 465 U.S. at 106, 104 S.Ct. 900.

Further, the grant of supplemental jurisdiction contained in 28 U.S.C. § 1367 cannot override Eleventh Amendment immunity. Pennhurst, 465 U.S. at 121, 104 S.Ct. 900 (claims that state officials violated state law in carrying out official responsibilities is claim against the state protected by Eleventh Amendment; same principle applies to state-law claims brought in federal court under pendent jurisdiction); Doran By and Through Doran v. Condon, 983 F.Supp. 886, 890 (D.Neb.1997) (State of Nebraska did not waive Eleventh Amendment immunity in State Tort Claims Act because act does not expressly specify state's intent to subject itself to suit in federal court); Matter of Norris, 88 B.R. 213, 214 (Bankr.D.Neb. 1988) (bankruptcy court dismissed for lack of subject matter jurisdiction plaintiff's action for conversion against State of Nebraska, finding that neither state constitution nor State Tort Claims Act waived state's sovereign immunity for actions brought in United States federal bankruptcy courts).

Therefore, I shall grant the State defendants' motion to dismiss as to Poor Bear's state-law claims for conversion and unjust enrichment in their entirety.

### 4. Failure to State Claim—Claims Against Robbins in Official Capacity

■ Poor Bear sues all the defendants in their official capacities only. Official-capacity suits are simply another method of bringing claims against the entity with which an official is affiliated. Monell v. Department of Social Servs., 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); Liebe v. Norton, 157 F.3d 574, 578–79 (8th Cir.1998). Because Poor Bear's suit against Sheridan County Sheriff Robbins in his official capacity is actually an action against Sheridan County itself, Poor Bear must allege that a policy or custom caused the claimed constitutional violations. Liebe, 157 F.3d at 578–79.

> Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ...

the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, ... local governments ... may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (footnote omitted).

An "official policy" for *Monell* purposes involves " 'a deliberate choice to follow a course of action ... made from among various alternatives' by an official who [is determined by state law to have] the final authority to establish governmental policy." *Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir.1998) (quoting *Jane Doe A v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir.1990)) (bracketed material in *Ware*). Alternatively, a "custom" under *Monell* is established by:

"(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation."

*Ware*, 150 F.3d at 880 (quoting *Jane Doe A.*, 901 F.2d at 646) (bracketed material in *Ware*).

The plaintiff does not allege the existence of a formal policy embodied in a policy statement, ordinance, regulation, or decision officially adopted and promulgated by Sheridan County, much less a policy that directs the county sheriff to violate individuals' rights under the Constitution and laws of the United States. Nor does Poor Bear allege a continuing, widespread, persistent pattern of unconstitutional misconduct by Sheridan County employees such that a *de facto* policy has been created, albeit without formal approval. Rather, Poor Bear appears to claim that Sheridan County is liable due to the unconstitutional acts of Sheriff Robbins, who is alleged to be a local official with final policymaking authority under state law.

Nebraska law does not grant authority to counties or county sheriffs like Robbins to set policy regarding apprehension of individuals who violate the state's criminal laws. Neb.Rev.Stat. Ann. §§ 23–103 to – 145, 23–1701 to –1737 (LexisNexis 1999 & Cum Supp.2003). To the contrary, county sheriffs like defendant Robbins are bound by state law to exercise only those powers and duties "conferred and imposed upon him or her by other statutes and by the common law," including the duty to "apprehend, on view or warrant, and bring to the court all felons and disturbers and violators of the criminal laws of this state, to suppress all riots, affrays, and unlawful assemblies which may come to his or her knowledge, and generally to keep the peace in his or her proper city." Neb.Rev. Stat. Ann. §§ 23–1701.02 & 23–1701.03. *See also* Neb.Rev.Stat. Ann. § 23–1710 (sheriff has duty to preserve peace, ferret out crime, apprehend and arrest all criminals, secure evidence of crimes committed, present evidence to county attorney and grand jury, and file informations "against all persons who he knows, or has reason to believe, have violated the laws of the state.")

In this case, Poor Bear essentially alleges that Robbins violated Poor Bear's constitutional rights when Robbins participated in issuing an order preventing Poor Bear and others from engaging in a protest march down the main street of Whiteclay after having observed violence and destruction during a similar protest just a week earlier, apprehending Poor Bear when he violated such order, and pursuing prosecution for violation of the order, yet failing to zealously pursue crimes that have been committed against the Lakota people. The policies Sheriff Robbins is charged with carrying out—keeping peace, apprehending and arresting violators of the law, and pursuing prosecution of those who have violated state law—are set by the state legislature, and the implementation of these policies by a municipal official does not constitute formulation by a final policy-making body sufficient to impose liability upon the municipality. " 'When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.' " *McGautha v. Jackson County, Missouri, Collections Dept.*, 36 F.3d 53, 56 (8th Cir.1994) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). In short, a "county sheriff acts pursuant to state-enacted restrictions in enforcing the criminal laws of Nebraska and is not himself a policy maker for the county for which he is sheriff." *Branting v. Schneiderheinz*, 1996 WL 580457, at *3 (D.Neb.1996).

Accordingly, I shall grant defendant Robbins' motion to dismiss the causes of action asserted against him for failure to state a claim.

## B. ANALYSIS OF CLAIMS DISMISSED

Because the constitutional claims, factual allegations, and defendants named in Poor Bear's complaint are many, I shall specifically state my reasons for dismissing each part of Plaintiff's claims, referencing the above discussion of the defendants' grounds for dismissal as applicable.

### 1. First Cause of Action (Freedom of Expression, Right to Assembly, and Right to Petition Government)—Asserted Against Nesbitt & Robbins

This cause of action alleges that Nesbitt's and Robbins' actions on July 3, 1999, "and subsequent times" prevented the plaintiff from speaking, gathering, and assembling to present their grievances to the government. Poor Bear's claims against defendant Nesbitt in the First Cause of Action are barred by *Heck v. Humphrey*, as discussed in section II(A)(1) of this Memorandum and Order, above. The Sheridan County Court on November 22, 2000, determined that "the order given by law enforcement officers, for the marchers to not enter the main street through the business district of Whiteclay, was a lawful order." (Filing 20, Ex. 4, Journal re: Question of Lawful Order) A finding by this court that this July 3, 1999, order—and future ones like it—violate the plaintiff's constitutional rights would necessarily render invalid Poor Bear's criminal conviction and sentence for failing to obey that lawful order, Neb.Rev.Stat. § 81–2008. Further, Poor Bear's federal claims for money damages and declaratory relief (i.e., declaration that Nesbitt violated federal law in the past), contained in the First Cause of Action are barred by the Eleventh Amendment, as discussed above in Section II(A)(3)(a) of this Memorandum and Order.

Poor Bear's claims against defendant Robbins in the First Cause of Action shall be dismissed for failure to properly allege that a policy or custom caused the claimed

constitutional violations, as discussed previously in Section II(A)(4) of this Memorandum and Order.

### 2. Second Cause of Action (Free Exercise of Religious Practices and Equal Protection of Laws in Criminal Prosecution)—Asserted Against Nesbitt & Robbins

Poor Bear's claim that Nesbitt's and Robbins' actions on June 26, 1999, violated his right to freely exercise his religion is barred by the statute of limitations, Neb. Rev.Stat. § 25–207, as discussed in Section II(A)(2) of this Memorandum and Order. Poor Bear's similar claim that Nesbitt's and Robbins' order on July 3, 1999, violated his right to freely exercise his religion is barred by *Heck v. Humphrey* for the same reasons stated above as to Plaintiff's First Cause of Action.

■■■ Poor Bear's equal protection claim that Nesbitt and Robbins have pursued criminal prosecution against the Lakota for their religious practices, but not others, is barred by the Eleventh Amendment as to Nesbitt because this claim seeks money damages or declaratory relief for past violations of federal law, as opposed to prospective relief. This equal protection claim may also be dismissed as to defendant Robbins for failure to properly allege that a policy or custom caused this alleged constitutional violation. Finally, Poor Bear's equal protection claim may be dismissed for failure to allege that similarly situated people have not been prosecuted for similar conduct. *United States v. Leathers,* 354 F.3d 955, 963 (8th Cir.2004) (elements of equal protection selective prosecution claim). While Poor Bear refers to the "white majority in Sheridan County" who have not been subjected to criminal prosecution for their religious beliefs, Poor Bear does not allege that the "white majority" is similarly situated to the Lakota or that the "white majority" has engaged in conduct similar to that described in Poor Bear's complaint. (Filing 1, Complaint ¶ 45.)

### 3. Third Cause of Action (Right to Interstate Travel)—Asserted Against Nesbitt & Robbins

■■■ Poor Bear's Third Cause of Action alleges that Nesbitt's and Robbins' "actions, policies, practices, and customs" on July 3, 1999, and "continuing into the present" violated his constitutional right to engage in interstate travel—that is, his right to travel between the Pine Ridge Reservation and the State of Nebraska for the purpose of petitioning governmental authorities. (Filing 1, Complaint ¶ 46.)

This claim shall be dismissed for the same reasons stated above with regard to Poor Bear's First Cause of Action. Poor Bear's Third Cause of Action may also be dismissed as against both Nesbitt and Robbins for failure to state a claim. Poor Bear alleges that Nesbitt and Robbins violated his constitutional right "to go from one place to another, including the right to cross state borders while en route." *Saenz v. Roe,* 526 U.S. 489, 498–500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999) (describing constitutional right to travel from one state to another). However, Poor Bear makes no allegation whatsoever that the defendants' "actions, policies, practices, and customs" on July 3, 1999, and "continuing into the present" have imposed any kind of obstacle to his entry into the State of Nebraska. To the contrary, Poor Bear alleges only that he and fellow marchers were "stopped and prevented from entering Whiteclay." (Filing 1, Complaint ¶ 29.) Therefore, the defendants are not alleged to have directly impaired the exercise of Poor Bear's right to free interstate movement, an essential element of this claim. *Saenz,* 526 U.S. at 501, 119 S.Ct. 1518.

### 4. Fourth Cause of Action (Protection from Harm by Fair and Impartial Law Enforcement)—Asserted Against Nesbitt, Robbins, Logsdon, Coyne, Flower

 Poor Bear next alleges that the defendants have adopted a policy of minimal criminal law enforcement when the victims are Lakota, including failure to enforce "ongoing violations of the Nebraska Liquor Control Act" in Whiteclay which allegedly exploits the Lakotas' "vulnerability" to alcohol, creates alcohol addiction among the Lakota, and fuels increased criminal activity in the area. (Filing 1, Complaint ¶¶ 49–51.) Poor Bear alleges that when crime victims are Lakota, the defendants fail to employ enough "professional homicide, forensic, and criminalistic investigative specialists and technicians," undercover agents, "standard law enforcement sting operations against the stores in Whiteclay," and "standard law enforcement surveillance procedures and techniques to secure compliance with the liquor and criminal laws of the State of Nebraska." (Filing 1, Complaint ¶ 51.) Poor Bear claims that the "direct and proximate result of these policies and practices is the failure to apprehend and prosecute the perpetrators of violent crime against Lakota victims such as Plaintiff's brother," and that the defendants' failure to engage in proper law enforcement violates his right to equal protection and "personal safety and bodily integrity, fair and impartial law enforcement, as secured by the Due Process Clause." (Filing 1, Complaint ¶¶ 51 & 52.)

For the reasons discussed above, any portion of this cause of action referring to actions, or inaction, before July 3, 1999, shall be dismissed as barred by the applicable statute of limitations, Neb.Rev.Stat. § 25–207. Further, inasmuch as this cause of action requests monetary damages or declaratory relief for the State

defendants' (Nesbitt, Logsdon, Coyne, Flower) past violations of federal law, this cause of action must be dismissed pursuant to the Eleventh Amendment.

 To the extent Poor Bear's due process claim can be construed to request prospective injunctive relief not barred by the Eleventh Amendment, this claim shall also be dismissed as against State defendants Logsdon, Coyne, and Flower—members of the Nebraska Liquor Control Commission—because Poor Bear does not, and cannot, allege that the Commission members have "a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir.1990) (a defendant's liability under § 1983 requires direct responsibility for deprivation of rights).

This cause of action alleges that inadequate law enforcement related to crimes against Lakota people, including lax enforcement of Nebraska Liquor Control Act violations in Whiteclay, deprives Poor Bear of his constitutional rights. The Nebraska Liquor Control Commission obviously does not have jurisdiction over law enforcement activities related to violent crimes for which "professional homicide, forensic, and criminalistic investigative specialists and technicians" would be utilized. As to violations of the Liquor Control Act, the Commission has the power to "inspect or cause to be inspected any premises where alcoholic liquor is ... sold and, when sold ... in violation of law, ... bring an action to enjoin the use of the property for such purpose," and to suspend, cancel, and revoke retail liquor licenses after hearing, Neb.Rev.Stat. Ann. §§ 53–116.01 & 53–117 (LexisNexis 2002). However, Poor Bear does not allege—nor does the Liquor Control Act state—that Commission members are charged with organizing and executing "standard law enforcement" activities (i.e., use of undercover agents, sting operations,

and surveillance procedures, as referenced in Poor Bear's complaint) such that they could be held directly responsible under section 1983 for constitutional violations allegedly stemming from the lax use of such law enforcement techniques. *See* Neb.Rev.Stat. Ann. §§ 53–197 (sheriffs, deputy sheriffs, police officers, and marshals who know or are informed of offense related to alcoholic liquor sales shall make complaint against offender to proper court); 53–198 (place where liquor sold in violation of Liquor Control Act is common nuisance and is subject to lien enforced by civil action brought by county attorney or assistant attorney general); 53–199 (attorney general or county attorney may maintain injunction action to abate and enjoin nuisance); 53–1,108 (judge issues search warrants related to violations of Liquor Control Act); 53–1,109 (judge to issue such search warrants to peace officer with jurisdiction); 53–1,122 (authorizing minors to assist law enforcement officers in determining compliance with statutes prohibiting sale of alcohol to minors). Therefore, Poor Bear's due process claim for prospective injunctive relief against defendants Logsdon, Coyne, and Flower shall be dismissed.

■ Poor Bear's due process failure-to-protect claim for prospective injunctive relief may also be dismissed against Nebraska State Patrol Superintendent Nesbitt because "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). This is not a case in which the State has taken a person into its custody against the persons's will such that the Constitution requires the State to assume responsibility for the person's well-being. *DeShaney*, 489 U.S. at 199–200, 109 S.Ct. 998 (any affirmative duty of the State to protect arises not from its "knowledge of the individual's predicament," but "from the limitation which it has imposed on his freedom to act on his own behalf," such as through incarceration, institutionalization, or other restraint of personal liberty).

Poor Bear's due process claim against defendant Robbins may also be dismissed for failure to sufficiently allege that a policy or custom caused the due process violation for the reasons discussed in Section II(A)(4) of this Memorandum and Order. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *McGautha*, 36 F.3d at 56 (internal citation omitted.) In short, a "county sheriff acts pursuant to state-enacted restrictions in enforcing the criminal laws of Nebraska and is not himself a policy maker for the county for which he is sheriff." *Branting*, 1996 WL 580457, at *3.

■ Finally, Poor Bear's equal protection claim in the Fourth Cause of Action shall be dismissed for failure to allege the existence of people who are similarly situated to the plaintiff and for whom Nebraska's criminal and liquor-control laws are vigorously enforced.

### 5. Fifth Cause of Action (Unlawful Taking Without Just Compensation, Unjust Enrichment, and Conversion)—Asserted Against Nesbitt, Logsdon, Coyne, Flower

Poor Bear alleges in his Fifth Cause of Action that President Roosevelt's January 25, 1904, Executive Order withdrawing the Whiteclay Extension from the Pine Ridge Reservation and placing it back into the public domain constituted an unconstitutional taking without just compensation. As a result of this taking, claims Poor Bear, the State defendants have been unjustly enriched with "profits in the form of

sales tax income from the continued sale of alcohol in the buffer zone of the Whiteclay Extension" and "have misappropriated and converted to their own use the value of the land which belonged to the Plaintiff and the Lakota for their communal protection." (Filing 1, Complaint ¶ 60.)

As discussed in Section II(A)(3) above, because Poor Bear's taking claim requests compensation from State officials for past violations of federal law—as opposed to prospective injunctive relief—this claim may be dismissed pursuant to the Eleventh Amendment.[5] As stated in Section II(A)(3) above, the Eleventh Amendment also bars Poor Bear's conversion and unjust enrichment claims against the State defendants (Nesbitt, Logsdon, Coyne, Flower) in their entirety.

## III. CONCLUSION

For the reasons stated above, the defendants' motions to dismiss (filings 19 & 22) shall be granted and this matter shall be dismissed in its entirety.

IT IS ORDERED:

1. The motions to dismiss filed by defendant Robbins (filing 19) and by defendants Nesbitt, Logsdon, Coyne, and Flower (filing 22) are granted;

2. This case is dismissed in its entirety;

3. Judgment shall be entered by separate document.

---

5. Further, the fact that Poor Bear asserts his taking claim—based on a President's 1904 Executive Order—against the Superintendent of the Nebraska State Patrol and three members of the Nebraska Liquor Control Commission raises serious standing questions. Poor Bear has failed to allege facts establishing that the injury complained of is " 'fairly ... trace[able] to the challenged action of the defendant[s], and not ... th[e] result [of] the independent action of some third party not before the court.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (describing three ele-

## JUDGMENT

Pursuant to the Memorandum and Order entered this date granting the defendants' motions to dismiss, this case is dismissed in its entirety.

ments of constitutional standing) (quoting *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). *See also* 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3573.1, at 198 (1984) (standing in § 1983 cases "turns on the general rules of standing rather than any peculiarity of § 1983"); *Delorme v. United States,* 354 F.3d 810 (8th Cir.2004) (party invoking federal jurisdiction must establish constitutional and prudential standing as indispensable part of plaintiff's case).