# United States Court of Appeals
## For the Eighth Circuit
_____

No. 14-1747
_____

James L. Dean; Lois P. White, as Personal Representative of the Estate of Joseph White, deceased; Kathleen A. Gonzalez; Thomas W. Winslow; Ada Joann Taylor; Debra Sheldon

*Plaintiff - Appellant*

v.

County of Gage, Nebraska, a Nebraska political subdivision; Burdette Searcey, Dep., in his official and individual capacities; Wayne R. Price, PhD., in his official and individual capacities; Ryan L. Timmerman, Personal Representative of the Estate of Jerry O. DeWitt

*Defendants - Appellees*

Richard T. Smith, in his official and individual capacities; Gerald Lamkin, Dep., in his official and individual capacities; Gage County Attorney's Office, a Nebraska political subdivision; Gage County Sheriff's Office, a Nebraska political subdivision

*Defendant*s
_____

No. 14-1773
_____

James L. Dean; Lois P. White, as Personal Representative of the Estate of Joseph White, deceased; Kathleen A. Gonzalez; Thomas W. Winslow; Ada Joann Taylor; Debra Sheldon

*Plaintiffs - Appellees*

v.

County of Gage, Nebraska, a Nebraska political subdivision

*Defendant*

Burdette Searcey, Dep., in his official and individual capacities; Wayne R. Price, PhD., in his official and individual capacities; Ryan L. Timmerman, Personal Representative of the Estate of Jerry O. DeWitt

*Defendants - Appellants*

Richard T. Smith, in his official and individual capacities; Gerald Lamkin, Dep., in his official and individual capacities; Gage County Attorney's Office, a Nebraska political subdivision; Gage County Sheriff's Office, a Nebraska political subdivision

*Defendant*s

_____

Appeals from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: September 17, 2015
Filed: December 7, 2015

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

DNA evidence exonerated Joseph E. White and the five other plaintiffs of rape and murder. They sued Gage County and the officers involved in their case. After an appeal from summary judgment and a mistrial on remand, the district court dismissed plaintiffs' conspiracy claim and all claims against Gage County. The

-2-

district court denied qualified immunity to the officers. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands the dismissal, and affirms the denial of qualified immunity.

I.

In 1989, Joseph White was convicted for the rape and murder of Helen Wilson. The prosecution used testimony and confessions from White's co-defendants—Ada JoAnn Taylor, Thomas W. Winslow, James L. Dean, Kathleen A. Gonzalez, and Debra Shelden—all of whom pled guilty to related charges. After DNA testing in 2008, all convictions were pardoned or overturned. Plaintiffs individually filed 42 U.S.C. §§ 1983 and 1985 claims against Gage County, sheriff Jerry O. DeWitt (and his employees Dr. Wayne R. Price and Burdette Searcey), and county attorney Richard T. Smith, alleging Fifth and Fourteenth Amendment due process violations. Plaintiffs claimed officers led a reckless investigation, manufactured false evidence, conspired to manufacture evidence, and coerced testimony. On two earlier appeals from separate summary judgments, this court determined: "evidence is sufficient to support Plaintiffs' claims that their rights to fair criminal proceedings were violated as the result of a reckless investigation and Defendants' manufacturing of false evidence"; evidence was sufficient to support a conspiracy claim; evidence was not sufficient to support a coercion claim; members of the sheriff's office were not protected by qualified immunity; and the county attorney was protected by absolute immunity. *Winslow v. Smith*, 696 F.3d 716, 721, 740 (8th Cir. 2012) (reversing summary judgment on qualified immunity and reinstating claims against Gage County, affirming dismissal of coercion claim, and affirming dismissal of claims against county attorney Smith based on absolute prosecutorial immunity); *White v. Smith*, 696 F.3d 740, 743 (8th Cir. 2012) (affirming denial of qualified immunity, holding sufficient evidence existed to support conspiracy claim).

-3-

Trial of the consolidated claims began January 6, 2014. At the close of plaintiffs' evidence, the district court granted the Gage County and the officers' Rule 50(a)(1) motion, dismissing the conspiracy claim against all parties and all claims against Gage County. It denied the officers' Rule 50(a)(2) motion for qualified immunity on the remaining claims of manufacturing evidence and conducting a reckless investigation. After three days of jury deliberation with no verdict, the district court declared a mistrial and ordered a new trial. One month later, the district court certified its Rule 50(a)(1) order under Rule 54(b) to authorize an appeal. It also denied the officers' renewed motion for qualified immunity, which they cross-appeal.

## II.

The officers claim they are entitled to qualified immunity. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

This court reviews the district court's denial of a motion for judgment as a matter of law de novo, "using the same standards as the district court." *Luckert v. Dodge Cnty.*, 684 F.3d 808, 816-17 (8th Cir. 2012) (reviewing denial of Rule 50(b) motion for qualified immunity). This court "must draw all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence." *Phillips v. Collings*, 256 F.3d 843, 847 (8th Cir. 2001) (reviewing denial of Rule 50(b) motion for qualified immunity).

To overcome qualified immunity, plaintiffs must demonstrate both that "(1) there was a deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation." *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015). Since this court previously denied qualified immunity for the

-4-

officers as a matter of law, the district court should not consider a Rule 50 motion on qualified immunity unless substantially different evidence was produced at trial. *See, e.g.*, ***Kerman v. City of New York***, 374 F.3d 93, 110 (2d Cir. 2004) (applying law-of-the-case doctrine in appeal from Rule 50 qualified immunity decision); ***Oladeinde v. City of Birmingham***, 230 F.3d 1275, 1288 (11th Cir. 2000) (same). *See generally* ***Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.***, 807 F.2d 1433, 1441 (8th Cir. 1986) ("[W]e will reconsider a previously decided issue only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice.").

The officers argue that the evidence introduced at trial varies greatly from that identified at summary judgment. Resolving the appeal from summary judgment, this court previously stated, "Another troubling piece of evidence is that Price offered to serve as Dean's therapist without initially informing Dean of his role as a law enforcement officer. Price then told Dean that his polygraph results indicated he was repressing memories of the crime." ***White***, 696 F.3d at 755. The officers claim, at trial, they showed this was untrue. However, the record the officers cite shows only that Price had previously told Dean's attorney that he was a psychologist for the state and his conversations with Dean would not be confidential. Price met with Dean in his role as "deputy sheriff." Price told Dean he was a police psychologist but never explained his role to Dean or informed Dean that he was not acting as his psychologist. After meeting with Dean several times, Price told Dean that he "failed" his polygraph test and recommended therapy. Price recorded his belief that Dean was present at the crime scene and was repressing memory. This slight variance does not alleviate this court's previous concerns or overcome the vast amount of troubling evidence presented at trial.

The officers also claim that "the testimony by the attorneys who represented Dean, Shelden, and Taylor all indicated that they were never informed by their clients that the officers were doing anything that would amount to coercion or that they were

being mistreated by the officers." This court previously affirmed the dismissal of the coercion claim, and the claim is not at issue in this appeal. *See* **Winslow**, 696 F.3d at 738. The trial testimony does not support the officers' entitlement to qualified immunity. The district court correctly denied the renewed Rule 50 motion for qualified immunity.

## III.

### A.

Before addressing the conspiracy claim and claims against Gage County, this court is obligated to independently consider its jurisdiction. **Outdoor Cent., Inc. v. GreatLodge.com, Inc.**, 643 F.3d 1115, 1118 (8th Cir. 2011). It is a general rule that only orders that dispose of all claims are final and appealable. **Williams v. Cnty. of Dakota, Neb.**, 687 F.3d 1064, 1067 (8th Cir. 2012).

"Rule 54(b) creates a well-established exception to this rule by allowing a district court to enter a final judgment on some but not all of the claims in a lawsuit." **Id.** Rule 54(b) states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

A district court considering Rule 54(b) certification "must first determine that it is dealing with a 'final judgment'" that disposes of a claim. ***Curtiss-Wright Corp. v. Gen. Elec. Co.***, 446 U.S. 1, 7 (1980). Second, "[i]n determining that there is no just reason for delay, the district court must consider both the equities of the situation and judicial administrative interests, particularly the interest in preventing piecemeal appeals." ***Williams***, 687 F.3d at 1067 (alteration in original), *quoting* ***Curtiss-Wright***, 446 U.S. at 7.

Interlocutory appeals are "generally disfavored" and "only the special case . . . warrants an immediate appeal from a partial resolution of the lawsuit." ***Clark v. Baka***, 593 F.3d 712, 714-15 (8th Cir. 2010) (per curiam). *See* ***Hayden v. McDonald***, 719 F.2d 266, 269 (8th Cir. 1983) (per curiam) (listing relevant factors in reviewing Rule 54(b) certifications). This court must "scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." ***Curtiss-Wright***, 446 U.S. at 10; ***Outdoor Cent.***, 643 F.3d at 1119. Where each claim "requires familiarity with the same nucleus of facts and involves analysis of similar legal issues, the claims should be resolved in a single appeal." ***Outdoor Cent.***, 643 F.3d at 1119; ***Hayden***, 719 F.2d at 270 (discouraging certification when claims deal "with essentially one set of facts, with which this court would need to refamiliarize itself on subsequent appeals"). *See generally* ***Spiegel v. Trustees of Tufts Coll.***, 843 F.2d 38, 45 (1st Cir. 1988) ("A similarity of either legal or factual issues (or both) militates strongly against invocation of Rule 54(b)." (citing ***Solomon v. Aetna Life Ins. Co.***, 782 F.2d 58, 62 (6th Cir. 1986) *and* ***Morrison-Knudsen Co. v. Archer***, 655 F.2d 962, 965 (9th Cir. 1981))).

If these judicial concerns are met, this court gives the district court's weighing of equities substantial deference, reviewing the certification for an abuse of discretion. ***Williams***, 687 F.3d at 1068 (holding the district court is "most likely to be familiar with the case and with any justifiable reasons for delay"). This court's

role "is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record." *Curtiss-Wright*, 446 U.S. at 10 ("The reviewing court should disturb the trial court's assessment of the equities only if it can say that the judge's conclusion was clearly unreasonable."). *See Williams*, 687 F.3d at 1067 ("Certification should be granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal.").

As for the first determination, the district court's order dismissing the conspiracy claim and all claims against Gage County was final.

As for the second determination, the district court, considering "equities of the situation and judicial administrative interests," ruled it was "preferable" to allow plaintiffs to appeal after the mistrial instead of after a second trial because the record is "fully developed . . . and the issues are fairly limited in scope," involving questions of law (whether plaintiffs waived their conspiracy claim and whether officers were "policy makers"). The district court properly reasoned that an appeal from the dismissal of the conspiracy claim was likely, and that an appeal from the county's dismissal was a "near certainty."

The mistrial created the special case for an immediate appeal. This litigation has already generated three interlocutory appeals, including this one. The district court recognized "the large trial record and the complexity and difficulty of this case." Delaying the appeal until the close of another trial will add to this case's complexity by requiring consideration of two separate, fully developed records, and may require yet another trial if the appeal were successful.

The certified issues on appeal are "self-contained" and an "appellate ruling will finally resolve the sufficiency" of the claims. *See Outdoor Cent.*, 643 F.3d at 1120. Rule 54(b) certification is appropriate.

B.

This court reviews "de novo the grant or denial of a motion for judgment as a matter of law, using the same standards as the trial court." ***Shaw Hofstra & Assocs. v. Ladco Dev., Inc.***, 673 F.3d 819, 825 (8th Cir. 2012).  Reviewing the sufficiency of the evidence, this court draws "all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence." ***Id.***  A Rule 50(a) motion is proper only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." **Fed. R. Civ. P. 50(a)(1)**; ***Moran v. Clarke***, 296 F.3d 638, 643 (8th Cir. 2002) ("Such a ruling is appropriate only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.").

1.

Plaintiffs challenge the district court's dismissal of their conspiracy claim.  The district court held that plaintiffs "failed to preserve [their conspiracy] claim in the final pretrial conference order" and that the evidence at trial was insufficient "to prove the essential elements of a conspiracy claim."  After a thorough review of the record, this court disagrees.

True, "[t]he issues identified in the Pretrial Order supersede any issues raised in the Complaint and Amended Complaint." ***Hartman v. Workman***, 476 F.3d 633, 634 n.3 (8th Cir. 2007).  However, the district court heard the case on remand, after this court held that "a factfinder could determine that White's conviction was the result of a purposeful conspiracy by Defendants to fabricate evidence." ***White***, 696 F.3d at 757.  (The other plaintiffs' conspiracy claims were not at issue in prior appeals, although their claims arise from the same facts.)  Affirming the denial of summary judgment on conspiracy, this court preserved the claim for trial.  The district court's initial pretrial order and its reframing of issues on remand are nearly identical.

They both include as a controverted issue whether "Defendants, or any one of them, manufactured false evidence against a named Plaintiff." The district court did not say that its reframing of issues excluded the previously pled conspiracy claim. Plaintiffs continued to argue the conspiracy issue in trial, proffering evidence (arguing hearsay testimony was made in furtherance of a conspiracy) and submitting proposed jury instructions on the conspiracy claim. They did not waive their conspiracy claim. The district court improperly held that the claim was waived on remand.

"To prove a civil conspiracy under § 1983, [plaintiffs] must show (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy." *Livers v. Schenck*, 700 F.3d 340, 360-61 (8th Cir. 2012). "To be liable as a conspirator [one] must be a voluntary participant in a common venture. . . . It is enough if [Defendants] understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do [their] part to further them." *White*, 696 F.3d at 757, *quoting* ***Jones v. City of Chicago***, 856 F.2d 985, 992 (7th Cir.1988) (alterations and ellipsis in original).

The evidence in support of conspiracy, viewed in favor of plaintiffs, is substantial. At trial, plaintiffs submitted evidence that defendants: were unable to match the blood and semen found at the crime scene; suggested to Dean, Shelden, and Gonzalez that they had repressed their memory of the rape and murder; conducted polygraphs, hypnosis, and recommended recall therapy to recover these blocked memories; conducted unrecorded and unreported interrogations; disregarded inconsistencies during interrogations; submitted affidavits without disclosing contradictions to evidence at the crime scene; and ignored verifiable alibis. Both sheriff DeWitt and county attorney Smith testified that they communicated frequently and worked together during investigation up to plaintiffs' convictions.

Plaintiffs "produced proof of questionable procedures" and "hasty condemnation" by officers in charge of policymaking. *See Moran*, 296 F.3d at 647-48 (8th Cir. 2002) (reversing grant of Rule 50(a) motion on conspiracy claim, holding police department "publicly and financially committed itself to producing a culprit for an alleged wrongdoing before any such wrongdoing was actually established"). Neither the district court nor the officers point to substantially different evidence presented at trial that would alter this court's previous finding on conspiracy. *See Little Earth of the United Tribes, Inc.*, 807 F.2d at 1441; *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 911 (8th Cir. 2005) (holding law of the case "does not deprive the district court of the ability to reconsider earlier rulings to avoid reversal"). There was a sufficient evidentiary basis for a jury to find for plaintiffs on their conspiracy claim. This court again concludes that "the facts viewed in the light most favorable to White [and plaintiffs] give rise to the reasonable inference that Defendants acted in concert with the goal of securing" plaintiffs' convictions. *See White*, 696 F.3d at 757. The district court erred in dismissing the conspiracy claim.

2.

Plaintiffs challenge the dismissal of their official-capacity claims against Gage County. Plaintiffs argue that sheriff DeWitt and county attorney Smith "were the final decisionmakers and sole policymakers for their respective elected county offices," and "their conduct in those specific areas is fairly attributed to Gage County." Because this court previously determined that "there is no evidence that any action taken by Smith prior to the filing of criminal complaints against Plaintiffs was unconstitutional," it need not consider whether the County is liable for his actions. *See Winslow*, 696 F.3d at 739.

"[A] local government is liable under § 1983 for its policies that cause constitutional torts. These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'"

-11-

***McMillian v. Monroe Cnty., Ala.***, 520 U.S. 781, 784 (1997), *citing **Monell v. Dep't. of Soc. Servs.***, 436 U.S. 658, 694 (1978). "[T]he trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue. Once those officials who have the power to make official policy on a particular issue have been identified, it is for the jury to determine whether *their* decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur, or by acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." ***Jett v. Dallas Ind. Sch. Dist.***, 491 U.S. 701, 737 (1989). "An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business." ***Angarita v. St. Louis Cnty.***, 981 F.2d 1537, 1546 (8th Cir. 1992).

Relying on *Poor Bear v. Nesbitt*, 300 F.Supp.2d 904 (D. Neb. 2004), the district court ruled that a "county sheriff acts pursuant to state-enacted restrictions in enforcing the criminal laws of Nebraska and is not himself a policy maker for the county for which he is a sheriff." *See **Poor Bear***, 300 F.Supp.2d at 917. In *Buzek v. County of Saunders*, 972 F.2d 992, 995 (8th Cir. 1992), this court said that a Nebraska sheriff had "broad discretion to set policy as the County's elected Sheriff." Although in *Buzek* the specific policymaking authority was the "exclusive authority to fire" a deputy, *Buzek* shows that a Nebraska sheriff has final policymaking authority in certain areas. Nebraska law determines if a Nebraska sheriff has final policymaking authority in the area of law enforcement investigations and arrests. *See **Atkinson v. City of Mountain View, Mo.***, 709 F.3d 1201, 1214 (8th Cir. 2013) ("Whether Sanders exercised final policymaking authority for the city is 'a question of state law.'" (quoting ***St. Louis v. Praprotnik***, 485 U.S. 112, 123 (1988) (plurality opinion))). *See also **Pembaur v. City of Cincinatti***, 475 U.S. 469, 481 (1986) (plurality opinion) ("Municipal liability attaches only where the decisionmaker

possesses final authority to establish municipal policy with respect to the action ordered.").

Sheriff DeWitt made final policy with regard to law enforcement investigations and arrests in Gage County. "It has been the declared policy of the State of Nebraska in the exercise of its police powers to foster and promote local control of local affairs. Highest ranking in this hierarchy of local matters is the supervision of law enforcement. The state provides a system of law enforcement and local officers to carry out the functions thereof on a day-to-day basis within such system." **Neb. Rev. Stat. § 23-2801**. "It [is] the duty of the sheriff by himself or deputy to preserve the peace *in his county*, to ferret out crime, to apprehend and arrest all criminals, and insofar as it is within his power, to secure evidence of all crimes committed *in his county*, and present the same to the county attorney and the grand jury; to file informations against all persons who he knows, or has reason to believe, have violated the laws of the state, and to perform all other duties pertaining to the office of sheriff." **§ 23-1710** (emphasis added). The sheriff has "charge and custody of the jail, and the prisoners of the same, and is required to receive those lawfully committed and to keep them himself or herself, or by his or her deputy jailer, until discharged by law." **§ 23-1703**. Wearing a uniform and badge is "discretionary at the option of the sheriff when he or she or his or her deputies are engaged in special investigations or mental patient assignments." **§ 23-1717.** The officers do not identify a statute giving any entity supervisory authority over the sheriff or a statute requiring a sheriff to answer to any superior. *See generally **Morro v. City of Birmingham***, 117 F.3d 508, 514 (11th Cir. 1997) (considering meaningful administrative review in the ability to make policy).

In *McMillian*, the parties agreed that the sheriff had final policymaking authority in the area of law enforcement, but disagreed whether the sheriff made policies for the *state* or the *county*. This court must "simply ask whether Sheriff [DeWitt] represents the State or the county when he acts in a law enforcement

-13-

capacity." ***McMillian***, 520 U.S. at 785-86 ("[T]he question is not whether Sheriff Tate acts for Alabama or Monroe County in some categorical, 'all or nothing' manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." (citing ***Jett***, 491 U.S. at 737)). Although the Court in *McMillian* found Alabama sheriffs are *state* policymakers, "the States have wide authority to set up their state and local governments as they wish. . . . [T]he importance of counties and the nature of county government have varied historically from region to region, and from State to State." ***Id.*** at 795.

A comparison of Nebraska and Alabama law demonstrates that Nebraska sheriffs make policy on behalf of their counties. In *McMillian*, the Court examined three compelling authorities: (1) the Alabama constitution lists sheriffs as members of the state executive branch; (2) "authority to impeach sheriffs was moved from the county courts to the State Supreme Court," and (3) the Alabama Supreme Court has held that "tort claims brought against sheriffs based on their official acts . . . constitute suits against the State, not suits against the sheriff's county." ***McMillian***, 520 U.S. at 788-89. Nebraska law differs from Alabama law in each area. Neither the Nebraska constitution nor its statutes list sheriffs as members of its executive branch. *See* **Neb. Const. Art. IV § 1**; **Neb. Rev. Stat. § 81-101**. Unlike Alabama, Nebraska district courts have authority to remove county officers, including sheriffs. *See* **§§ 23-2001**; **77-1719.02**. Finally, the Nebraska Supreme Court has held a county liable for the negligent and intentional torts of its sheriff. *See* ***Brandon v. Cnty. of Richardson***, 261 Neb. 636, 627-28 (2001).

Other Nebraska laws indicate that sheriffs represent the county when acting in a law enforcement capacity. A sheriff is a county officer. *See* **Neb. Rev. Stat. §§ 23-1114.01-1114.08** (listing sheriff's salary under sections titled "County Officers; Salaries"). A sheriff's salary is set by the county board. **§ 23-1114**. The county provides the sheriff's office with equipment. **§ 23-1715**. The registered voters elect

the county sheriff and may recall the sheriff from office. **§§ 32-520**, **32-1302**. True, some statutes show state influence. For example, sheriffs are required to train in the Nebraska Law Enforcement Training Center. **§ 23-1701.01**. Sheriffs "shall attend upon the district court" and must "execute or serve all writs and process issued by any county court." **§§ 23-1705**, **23-1701.04**. The State also empowers sheriffs to act beyond the boundaries of their counties in some circumstances. *See* **§ 29-205** (removing absconders to county where wanted). Nowhere has the Nebraska legislature given other county officers the authority to enact policies on criminal investigation and arrests. *See* **§ 23-104**. However, based on the *McMillian* factors, Sheriff DeWitt represents the county in the area of law enforcement investigations and arrests.

The county "may only be held liable for constitutional violations which result from a policy or custom of the municipality." ***Scheeler v. City of St. Cloud***, 402 F.3d 826, 832 (8th Cir. 2005). It is for the jury to determine whether Sheriff DeWitt's decisions "caused the deprivation of rights at issue by policies which affirmatively command that it occur." ***Jett***, 491 U.S. at 737. The district court erroneously dismissed the claim against the county believing that "the plaintiffs failed to present evidence of an official policy, unofficial custom, or a deliberately indifferent failure to train or supervise that could create liability." To the contrary, the plaintiffs introduced evidence that Sheriff DeWitt made decisions about the investigations in this case. For example, he was present when White was arrested and interrogated, and watched as his deputies ignored White's repeated requests for counsel. He was also present at Dean's interrogation and watched as Dean's requests for counsel were ignored. Sheriff DeWitt knew the Beatrice Police department believed the wrong people were arrested and told the chief of police to stay out of investigations, and that Sgt. Stevens was "muddying the waters." DeWitt attended an interrogation of Taylor, where she was systematically and intentionally coached. Dean testified that, in plain clothes, Dr. Price met with him in Sheriff DeWitt's office. DeWitt personally visited defendants' jail cells to tell them it was in their best interest to tell the truth.

-15-

He told Gonzalez that due to death threats from the community, she would be lucky to make it to the death penalty. It is for the jury to decide if these decisions (and others) by Sheriff DeWitt constituted Gage County policy that caused the deprivation of rights here. *See **Buzek***, 972 F.2d at 996 (finding district correctly instructed jury "that they should find the County liable if the actions of Sheriff Poskochil were the 'official policy' of the County" and correctly explained "that a single decision could reflect official County policy" (citing ***Pembaur***, 475 U.S. at 483)).

\* \* \* \* \* \* \*

The order dismissing the conspiracy claim and all claims against Gage County is reversed, and the case remanded for further proceedings consistent with this opinion. The order denying qualified immunity is affirmed.

_____