# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3696

_____

David Bonenberger

*Plaintiff - Appellee*

v.

St. Louis Metropolitan Police Department; The Board of Police Commissioners of the St. Louis Metropolitan Police Department; Bettye Battle-Turner, in her official and individual capacities as a member of the Board of Police Commissioners; Richard Gray, in his official and individual capacities as a member of the Board of Police Commissioners; Francis G. Slay, in his official and individual capacities as a member of the Board of Police Commissioners; Michael L. Gerdine, in his official and individual capacities as a former member of the Board of Police Commissioners; Jerry Lee, in his official and individual capacities as a former member of the Board of Police Commissioners; Thomas Irwin, in his official and individual capacities as a current member of the Board of Police Commissioners; Chief Daniel W. Isom, in his official and individual capacities; Lt. Col. Reggie L. Harris, in his official and individual capacities; Lt. Michael Muxo, in his official and individual capacities

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 24, 2015
Filed: January 19, 2016

_____

Before RILEY, Chief Judge, GRUENDER and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Sergeant David Bonenberger, a white man, applied for the position of Assistant Academy Director of the St. Louis, Missouri Police Academy. Sergeant Angela Taylor, an African-American woman, was chosen. Sergeant Bonenberger sued a number of officials in the St. Louis Police Department, alleging race discrimination and conspiracy to discriminate. A jury found in Sergeant Bonenberger's favor on his claims against three of his superiors: Academy Director Lieutenant Michael Muxo, Lieutenant Colonel Reggie Harris, and then-Police Chief Daniel Isom.[1] They appeal the district court's[2] denial of their motion for judgment as a matter of law. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.    BACKGROUND[3]

Sergeant Bonenberger was a long-time employee of the St. Louis Metropolitan Police Department. In September 2010, the Department posted a job opening for Assistant Academy Director of the city's police academy. Upon learning of the opening, Sergeant Bonenberger contacted Lieutenant Muxo, "to get a feel for" whether he might be eligible for the position, despite not meeting the minimum qualifications of three years of supervisory experience and two years of teaching experience. Lieutenant Muxo told Sergeant Bonenberger "not to bother applying

_____

[1]Chief Isom is now retired.

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

[3]We recite the facts in the light most favorable to the jury's verdict. See Southland Metals, Inc. v. Am. Castings, LLC, 800 F.3d 452, 458 (8th Cir. 2015).

. . . because the job was going to a black female. . . . [I]t was out of his hands . . . and [his superior Lieutenant] Colonel Harris would make the decision."

The outgoing Assistant Academy Director, Sergeant Deborah Boelling, also discussed the position with Lieutenant Muxo. When they discussed who might be selected for the position, Lieutenant Muxo declared, "there no way [sic] they were going to put a white male in that position." Sergeant Boelling suggested Lieutenant Muxo consider Sergeant Bonenberger for the position. She inquired who Lieutenant Muxo was "interested in" and why, and he replied Sergeant Taylor was being considered because "Harris wanted a black female in that position."

Sergeant Bonenberger applied for the job anyway, "hop[ing] that maybe something would fall through with the person they had picked out for it." Despite Sergeant Bonenberger's interest and Sergeant Boelling's recommendation, Lieutenant Muxo recommended Sergeant Taylor to Lieutenant Colonel Harris, who in turn recommended her to Chief Isom.

Like Sergeant Bonenberger, Sergeant Taylor did not meet the minimum qualifications for the position. She had less supervisory and teaching experience than Sergeant Bonenberger, and scored lower than Sergeant Bonenberger on her performance evaluations. Lieutenant Muxo wrote to Lieutenant Colonel Harris that he recommended Sergeant Taylor because "her management style [is] conducive to the vision I have for the Academy" and she is "a quick learner and can meet my expectations." Neither Sergeant Bonenberger nor Sergeant Taylor were interviewed.

The day Sergeant Taylor's selection was announced, Sergeant Bonenberger filed a grievance alleging he was improperly denied an interview for the position. Sergeant Bonenberger proposed the department should, among other things: "Rescind the transfer of [Sergeant Taylor; and] [g]rant me an interview for the position with a member of the [Equal Employment Opportunity Commission] present

during the interview." Sergeant Bonenberger did not mention his conversation with Lieutenant Muxo in the grievance because Lieutenant Muxo had been "truthful and honest" with him and he did not want to "throw him under the bus."

Lieutenant Muxo contacted Sergeant Bonenberger the day after Sergeant Taylor was selected and Lieutenant Muxo told him "he had no choice" and "he had to bring color down to the academy." A few days later, Chief Isom tacitly denied Sergeant Bonenberger's grievance, writing to a Department of Human Resources representative that he chose Sergeant Taylor for the position because she "had the most time in rank and a clean disciplinary background" and "the responsibility for the transfer of personnel rests with the Chief of Police and he/she retains the right to assign personnel as the needs of the Department dictate." Chief Isom's correspondence did not mention Sergeant Bonenberger's greater supervising and teaching experience, his greater number of certifications, or his superior performance evaluations.

In fact, Sergeant Bonenberger and Sergeant Taylor were promoted from Police Officer to Sergeant on the same day, and both had a disciplinary history. Sergeant Bonenberger had received multiple written reprimands and short-term suspensions for infractions such as careless driving, "[d]ischarging a [f]irearm at a [m]oving [v]ehicle," "failure to remain on assigned beat until relief is called," "unprofessional demeanor," and "fail[ing] to notify his superior of information concerning police matters" and "knowingly ma[king] false statements to . . . Internal Affairs" about that incident. Sergeant Taylor appears to have had fewer individual disciplinary incidents. However, she was suspended for 30 days in connection with eight disciplinary infractions after she "failed to secure medical attention for [a gunshot] victim," failed to investigate the crime or report it to a supervisor, and "made false statements to [the Internal Affairs Division]" in connection with the investigation of the incident.

Sergeant Bonenberger sued a number of officials in the Department in their official and individual capacities for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983 and § 1981, and the Missouri Human Rights Act (MHRA), alleging he was not hired for the Assistant Academy Director position due to his race. This appeal pertains only to Lieutenant Muxo, Lieutenant Colonel Harris, and Chief Isom. Sergeant Bonenberger alleges they discriminated against him based on his race and Lieutenant Muxo and Lieutenant Colonel Harris conspired to discriminate against him based on his race.

The jury found for Sergeant Bonenberger on his discrimination claims against all three defendants and his conspiracy claim against Lieutenant Muxo and Lieutenant Colonel Harris. Sergeant Bonenberger was awarded actual damages of $200,000 and punitive damages of $100,000 against Lieutenant Muxo, $300,000 against Lieutenant Colonel Harris, and $20,000 against Chief Isom. The district court granted additional equitable relief, including an injunction against future discrimination.

Lieutenant Muxo, Lieutenant Colonel Harris, and Chief Isom (appellants) moved for judgment as a matter of law, to amend the judgment, or for a new trial. The district court denied the motion. They appeal the denial of their motion for judgment as a matter of law.[4]

## II.  DISCUSSION
### A.  Standard of Review
"We review the denial of a motion for a judgment as a matter of law de novo, and we view the evidence in the light most favorable to the jury's verdict." Southland Metals, 800 F.3d at 458. We "will reverse only if 'there is a complete absence of

---

[4]Appellants mention their motion for a new trial only in their reply brief, so we do not consider it. See, e.g., Neb. State Legislative Bd., United Transp. Union v. Slater, 245 F.3d 656, 658 & n.3 (8th Cir. 2001).

probative facts to support the verdict.'" Am. Bank of St. Paul v. TD Bank, N.A., 713 F.3d 455, 462 (8th Cir. 2013) (quoting Sanders v. Lee Cty. Sch. Dist. No. 1, 669 F.3d 888, 894 (8th Cir. 2012)).

### B. Adverse Employment Action and Discrimination Claims

"A prima facie case of discrimination [under Title VII of the Civil Rights Act of 1964 and the MHRA] requires the employee to present evidence of an adverse employment action brought on by the employer's discriminatory motive." MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 927-28 (8th Cir. 2004); see also McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Sallis v. Univ. of Minn., 408 F.3d 470, 476 (8th Cir. 2005).

Appellants assert they are entitled to judgment as a matter of law because Sergeant "Bonenberger's speculative testimony did not provide sufficient evidence of an adverse employment action in order for his discrimination claim to get to the jury."[5] Because the Assistant Academy Director position was not a promotion and carried no increase in pay, benefits, or rank, appellants contend Sergeant Bonenberger experienced "purely subjective injuries and disappointment" not rising to the level of an adverse employment action. See id.

---

[5]This question of whether Sergeant Bonenberger suffered an adverse employment action was not submitted to the jury. Because Appellants do not raise any issue related to that fact on appeal, that issue is forfeited, and we do not address it. See, e.g., Neb. State Legislative Bd., United Transp. Union, 245 F.3d at 658 & n.3.

Denial of a sought-after transfer may constitute an adverse employment action if the transfer would result in a change in pay, rank, or *material working conditions*.[6] Cf. LePique v. Hove, 217 F.3d 1012, 1013-14 (8th Cir. 2000) (holding the denial of a requested transfer to the same position in a different city was not an adverse employment action because the transfer would have involved no material change in working conditions). Although appellants correctly assert Sergeant Bonenberger would not have experienced a change in pay or rank if he had been selected for the Assistant Academy Director position, we must also determine whether the position offered materially different working conditions. As the district court reasoned, Sergeant Bonenberger introduced evidence the Assistant Academy Director position was "a high-profile" job; involved significant supervisory duties; offered more "contact with command rank officers"; and provided regular daytime hours and holidays off. Historically sergeants who held the position of Assistant Academy Director were "significantly" more likely to be promoted to Lieutenant.

Because we have had little occasion to elaborate on "material working conditions" in the context of the denial of a requested transfer—the question presented here—we find a useful analogy in our cases holding that a compulsory, unwanted "transfer constitutes an adverse employment action when the transfer results in a *significant change in working conditions* or a diminution in the transferred employee's title, salary, or benefits." See Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919-20 (8th Cir. 2000) (emphasis added) (concluding an adverse employment action occurred where an employee was transferred to "an admittedly less prestigious

---

[6]Although the parties characterize the employment action at issue as a transfer, we note it may more closely resemble a hiring action. Sergeant Bonenberger was applying for a different job, not, for example, a transfer to the same job in another precinct. We conclude Sergeant Bonenberger suffered an adverse employment action regardless of whether Sergeant Bonenberger's pursuit of the Assistant Academy Director position is characterized as an application for a new job or a request for a transfer to a different job assignment.

-7-

unit," which involved "less lucrative clients and . . . a smaller sales territory"). We have held changes in supervisory duties, prestige, and promotion potential, if significant, can produce materially different working conditions. Cf., e.g., id.

For example, we determined a transfer from a supervisory to a non-supervisory position constituted an adverse employment action due to the significant difference in job functions. See Tadlock v. Powell, 291 F.3d 541, 546-47 (8th Cir. 2002) (explaining reassignment to a "less prestigious," non-supervisory position was an adverse employment action even though the employee retained "the same grade, salary, and benefits"). The potential of a transfer leading to future promotions or salary increases is also relevant, at least when combined with other material differences in working conditions. See Davis v. City of Sioux City, 115 F.3d 1365, 1369 (8th Cir. 1997) (declining to disturb a jury award in favor of a plaintiff who was transferred to another position with a higher salary but without supervisory status or comparable opportunities for salary increases and advancement).

Based on these previous interpretations, we conclude the Assistant Academy Director position's supervisory duties, regular schedule and hours, greater prestige, and potential increased opportunity for promotion, in combination, offered a material change in working conditions for Sergeant Bonenberger.[7] These materially different working conditions provide sufficient evidence to support the conclusion Sergeant Bonenberger suffered an adverse employment action. Because there were "probative facts to support the verdict," the district court did not err by denying appellants' motion for judgment as a matter of law on Sergeant Bonenberger's discrimination claims. See Am. Bank of St. Paul, 713 F.3d at 462.

---

[7]We express no opinion whether any one of these factors, standing alone, would constitute a material change in working conditions.

## C.    Conspiracy Claim

With regard to Sergeant Bonenberger's conspiracy claim, Lieutenant Muxo and Lieutenant Colonel Harris argue Sergeant Bonenberger failed to proffer sufficient evidence to prove they reached an agreement to deprive him of his constitutional rights.  To prove a § 1983 conspiracy claim, Sergeant Bonenberger must prove: "(1) that the defendant[s] conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured [him]."  White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008).  "[T]he plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.  [The plaintiff] can satisfy this burden by 'pointing to at least some facts which would suggest [the defendants] "reached an understanding" to violate [his] rights.'"  City of Omaha Emps. Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989) (alterations omitted) (quoting Nelson v. City of McGehee, 876 F.2d 56, 59 (8th Cir. 1989)).

Appellants argue a reasonable jury could not have found evidence of an agreement because Sergeant Bonenberger's and Sergeant Boelling's testimonies were that Lieutenant Colonel Harris told Lieutenant Muxo he had decided to hire a black woman, not that the two agreed.  See City of Omaha Emps. Betterment Ass'n, 883 F.2d at 653 ("Mere knowledge of another's wrongdoing is insufficient to hold a party liable as a conspirator.").  Although this is one reasonable interpretation of their testimony, it is not the only reasonable interpretation.  Sergeant Boelling's testimony could also be interpreted to support an inference that Lieutenant Muxo and Lieutenant Colonel Harris reached an agreement.  Sergeant Boelling testified:  "[Lieutenant Muxo] told me that [Lieutenant Colonel] Harris wanted a black female in the position, and that there no way [sic] *they* were going to put a white male in that position." (Emphasis added).  A reasonable jury could interpret Sergeant Boelling's use of "they" to mean Lieutenant Muxo was referring to himself, Lieutenant Colonel Harris, and possibly Chief Isom.  This interpretation properly was left to the jury.

Lieutenant Muxo's related statement to Sergeant Boelling that he was interested in Sergeant Taylor for the position because Lieutenant Colonel Harris wanted to hire a black woman could also support the inference that Lieutenant Muxo and Lieutenant Colonel Harris reached an understanding to discriminate against Sergeant Bonenberger based on his race.

We have held "'[t]he question of the existence of a conspiracy to deprive the plaintiff[] of [his] constitutional rights should not be taken from the jury if there is a possibility the jury could infer from the circumstances a "meeting of the minds" or understanding among the conspirators to achieve the conspiracy's aims.'" White, 519 F.3d at 816 (quoting Larson v. Miller, 76 F.3d 1446, 1458 (8th Cir. 1996) (en banc)). Because Sergeant Bonenberger put forth "'at least some facts which would suggest that [Lieutenant Muxo and Lieutenant Colonel Harris] "reached an understanding" to violate [his] rights,'" this question was reserved for the jury. City of Omaha Emps. Betterment Ass'n, 883 F.2d at 652 (quoting Nelson, 876 F.2d at 59). We affirm the district court's denial of appellants' motion for judgment as a matter of law.

III.  CONCLUSION
The judgment of the district court is affirmed.

_____

-10-