# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3264

_____

Kyle Soltesz, doing business as Top Dog Enterprises

*Plaintiff - Appellee*

v.

Rushmore Plaza Civic Center, a political subdivision of the City of Rapid City;
City of Rapid City, a political subdivision of the State of South Dakota

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: October 20, 2016
Filed: February 7, 2017

_____

Before MURPHY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Kyle Soltesz ran a concession stand in the Rushmore Plaza Civic Center in Rapid City, South Dakota. He sued the Civic Center and the City after his lease was terminated—supposedly without due process—and his property seized. At trial, Soltesz alleged municipal liability premised on the decision of a final policymaker. See Pembaur v. City of Cincinnati, 475 U.S. 469, 482-83 (1986). The district court

failed to identify the final policymaker as a matter of state law. Because the Supreme Court demands a district court make such an identification, we reverse and remand.

## I. Background

Kyle Soltesz operated as a food vendor in the Rushmore Plaza Civic Center under a five-year lease agreement. The Civic Center could terminate the agreement at any time with 45 days notice. Soltesz ran his concession stand—Top Dog Pizza—for two years until a video surveillance camera captured him assaulting one of his employees. The video was later viewed by the Civic Center's General Manager, Brian Maliske.

Maliske then took a series of steps to end the business relationship between Soltesz and the Civic Center. Maliske first called Soltesz into a meeting and confronted him with the video. Maliske next issued Soltesz a "no trespass" warning and then had security escort him out of the building. Soltesz understood the warning to mean that he would be arrested if he returned to the Civic Center. Several days later, the Civic Center's Board of Directors met. The record reveals no evidence whatsoever of what the Board did or did not discuss at its meeting. But shortly after the meeting ended, Soltesz's attorney received a letter signed by Maliske terminating the lease agreement immediately.

Over the next few months, Soltesz unsuccessfully sought to retrieve his property from the Civic Center and transfer his lease to another food vendor. But the "no trespass" warning remained in effect—he could not return to his concession stand to retrieve any of his property. Eventually two employees were allowed into the Civic Center; by that time, much of the food had spoiled. Soltesz also arranged to sell his business to another pizza vendor, so long as the Civic Center would transfer the lease from Soltesz to the new vendor. The Board rejected this request and shortly thereafter leased out Soltesz's old space.

Soltesz sued the Civic Center and the City of Rapid City—a municipality and a political subdivision of the State of South Dakota that owns and operates the Civic Center—under 42 U.S.C. § 1983. The suit alleged violations of federal and state law. Under federal law, Soltesz claimed a deprivation of his constitutional rights by the municipality. Specifically, he alleged that terminating the lease without the mandated 45 days notice violated the due process protections of the Fourteenth Amendment and that keeping his property locked in the concession stand was an unreasonable seizure under the Fourth Amendment. Under state law, Soltesz claimed breach of the lease, conversion, and tortious interference with business relationships. The Civic Center counter-claimed for breach of contract, failure to restore premises, fraud and deceit, and rescission.

Soltesz brought his federal claims under the Pembaur theory of municipal liability: a decision of an official responsible for establishing final policy attaches liability to the municipality. See Pembaur, 475 U.S. at 483. The case was tried to a jury. After Soltesz presented his case, the Civic Center moved for judgment as a matter of law ("JMOL"), arguing that Soltesz had failed to establish the identity of the final policymaker for the municipality in regards to his lease. The district court denied the motion and allowed the case to proceed. At the close of the Civic Center's case, the Civic Center again moved for JMOL, asserting that "the issue of who the final policy decision-maker is is a legal issue for the Court [to determine]." The district court again denied the motion, stating, "It's a fact issue, not a legal one. And I am not going to instruct the jury on who the person acting under color of law is." Indeed, the district court did not instruct the jury as to the identity of the official responsible for establishing final policy for the municipality. The jury ultimately found in favor of Soltesz on all of his claims.

The Civic Center raised the final-policymaker issue a third time in its renewed motion for JMOL following entry of judgment. The Center argued that state law designated the Board as the final policymaker and that Soltesz had failed to present

evidence showing the Board had violated his constitutional rights. The district court once again denied the motion. In its order, the court ruled that sufficient evidence was presented at "trial from which the jury could conclude that Mr. Maliske was the final policymaker for the Rushmore Civic Center." The court also suggested that the Civic Center's Board of Directors both ratified Maliske's decisions and delegated authority to him. In a footnote, the court alternatively held that, as a matter of law, "Maliske was the final decision-maker for the Rushmore Plaza Civic Center and the City of Rapid City with regard to their relationship with Mr. Soltesz." In a separate order, the district court granted Soltesz's motion for attorneys' fees under 42 U.S.C. § 1988(b). The Civic Center appeals the district court's denial of its renewed motion for JMOL and the award of attorneys' fees.

## II. Discussion

"We review the denial of a motion for a judgment as a matter of law de novo, and we view the evidence in the light most favorable to the jury's verdict." Bonenberger v. St. Louis Metro. Police Dep't, 810 F.3d 1103, 1107 (8th Cir. 2016) (internal quotation marks omitted). JMOL "is appropriate when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" Duban v. Waverly Sales Co., 760 F.3d 832, 835 (8th Cir. 2014) (quoting Fed. R. Civ. P. 50(a)(1)). "[I]n reviewing a jury verdict, we draw every reasonable inference in favor of the verdict and may not make credibility determinations or weigh the evidence." Chen v. Mukasey, 510 F.3d 797, 801 (8th Cir. 2007).

"[M]unicipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur, 475 U.S. at 483. Thus a single decision by a municipal official can constitute official policy. Bolderson v. City of Wentzville, 840 F.3d 982, 985

-4-

(8th Cir. 2016). But "liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 481.

"[T]he identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." Jett v. Dall. Indep. Sch. Dist., 491 U.S. 701, 737 (1989). The need for the trial judge to identify a final policymaker—and not submit the issue to the jury—is beyond debate. See, e.g., Dean v. Cnty. of Gage, 807 F.3d 931, 940 (8th Cir. 2015) (citing Jett, 491 U.S. at 737); Walden v. City of Providence, 596 F.3d 38, 55 (1st Cir. 2010) ("Whether an official is a final policymaker is . . . a question of law for the trial judge to decide."); Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist., 523 F.3d 1219, 1224 (10th Cir. 2008) ("The judge, not the jury, should determine who exercises final policymaking authority in a municipality."). "Only after the judge identifies an official as a final policymaker is it appropriate for the jury to determine whether [that official's] decisions have caused the deprivation of rights at issue by policies which affirmatively command that it occur." Atkinson v. City of Mountain View, 709 F.3d 1201, 1215 (8th Cir. 2013) (alteration in original) (internal quotation marks omitted).

District courts should consult two sources to identify the final policymaker: "(1) 'state and local positive law' and (2) state and local 'custom or usage having the force of law.'" Id. (quoting Jett, 491 U.S. at 737). State law, including valid local ordinances and regulations, will always direct the courts to some official or body of officials that has policymaking authority in a given area of the municipality's business. City of St. Louis v. Praprotnik, 485 U.S. 112, 125 (1988). Federal courts are not justified "in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." Id. at 126.

In addition to creating municipal liability for their own actions, final policymakers can also create this liability by either delegating policymaking authority to a subordinate or ratifying the actions of a subordinate. See id. at 124-27.

A subordinate official possesses delegated final policymaking authority when that official acts (1) free of review and (2) without any constraints imposed as a matter of policy by the original policymaker. Id. at 127. "If the board retains the authority to review, even though it may not exercise such review or investigate the basis of the decision, delegation of final authority does not occur." Milligan-Hitt, 523 F.3d at 1229 (internal quotation marks omitted). "[W]e are interested only in delegations of *legal power*, not in whether the board's actual exercise of its power of review was sufficiently aggressive." Id. at 1227. "Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." Praprotnik, 485 U.S. at 130. Even if an official has the final say on an issue, his decisions may not be final policy. "That a particular agent is the apex of a bureaucracy makes the decision final but does not forge a link between finality and policy." Gelin v. Hous. Auth. of New Orleans, 456 F.3d 525, 530 (5th Cir. 2006) (quoting Auriemma v. Rice, 957 F.2d 397, 400 (7th Cir. 1992)) (internal quotation marks omitted).

A final policymaker ratifies the decision of a subordinate when he or she takes an affirmative act to approve both the decision and the basis for the decision. Praprotnik, 485 U.S. at 127. "Accordingly, ratification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act." Lytle v. Carl, 382 F.3d 978, 988 n.2 (9th Cir. 2004). The issue of whether a final policymaker ratified a subordinate's decision is a question of fact for the jury to decide. See Christie v. Iopa, 176 F.3d 1231, 1238-39 (9th Cir. 1999).

The Supreme Court has set a high bar for establishing municipal liability under § 1983, and demands careful analysis from district courts, to avoid any risk that liability could be imposed under a theory of respondeat superior. See Pembaur, 475 U.S. at 479. A municipality bears responsibility for its own torts, not the torts of its employees. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). "[I]t is when execution of a government's policy[,] . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694.

Turning to the claims in this case, the Civic Center contends that no legally sufficient evidentiary basis exists to support the jury verdict. Whether an official possessed final policymaking authority, the Center continues, is a question of law. The district court thus erred in submitting the question to the jury. The Civic Center raised this very issue three times to the district court; the court denied the motion every time. The Civic Center, therefore, has preserved the issue for appellate review. See Walden, 596 F.3d at 55 (holding that a motion for JMOL preserved the issue of whether a municipal official is a final policymaker).

We agree with the Civic Center: no legally sufficient evidentiary basis exists to impose liability on a municipality for the decisions of a final policymaker when the district court fails to identify that policymaker. The district court must identify the final policymaker as a matter of law before the claims reach the jury. See, e.g., Atkinson, 709 F.3d at 1215. Even if the plaintiff proceeds on a theory of delegation or ratification, the court must identify the final policymaker. See Jett, 491 U.S. at 736-37 (holding that jury instructions regarding delegated policymaking are inappropriate because it is for the court to "identify those officials" whose wrongs can create municipal liability); Praprotnik, 485 U.S. at 127 ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). Failing to do so raises the risk of respondeat superior liability—a risk we cannot tolerate. For

§ 1983 liability to attach, the jury must find the decision of a final policymaker caused the constitutional deprivation. See Jett, 491 U.S. at 737. If the jury is not instructed as to who the final policymaker is, it cannot find that the decision of a final policymaker caused any constitutional deprivation. A verdict imposing municipal liability on the decision of a final policymaker, when the jury receives no instruction on the final policymaker's identity, cannot be affirmed. See Speer v. City of Wynne, 276 F.3d 980, 987 (8th Cir. 2002) (remanding the case to the district court, in part, because municipal liability had been imposed without the district court identifying a final policymaker). We must therefore vacate the jury verdict.

Soltesz and the district court each attempt to explain that factual evidence presented at trial supports the jury's verdict. Soltesz presents an argument that trial testimony showed Maliske had final policymaking authority in dealing with food vendors and their leases. In the alternative, Soltesz argues that the record implies the Board of Directors had delegated policymaking authority to Maliske because the Board did nothing after receiving notice of the lease termination. Again in the alternative, Soltesz argues that the record indicates the Board ratified Maliske's decisions when it failed to protest or stop termination of the lease. The district court, in its post-trial order denying the Civic Center's renewed motion for JMOL, held: "as a matter of law, . . . by the greater convincing weight of the evidence presented at trial[,] Maliske was the final decisionmaker for the Rushmore Plaza Civic Center and the City of Rapid City with regard to their relationship with Mr. Soltesz."

The explanations offered by Soltesz miss the clear import of Supreme Court precedent: the identity of the final policymaker is a question of state law for the court, not the jury, to decide. Thus an argument about the sufficiency of evidence supporting the jury's determination of the identity of the final policymaker "entirely misses the mark." Atkinson, 709 F.3d at 1216. The district court's post-trial order fares no better. The court repeats Soltesz's mistaken logic by basing its decision on evidence presented at trial suggesting Maliske was the de facto final policymaker.

But there are no de facto final policymakers—only de jure. See Gelin, 456 F.3d at 530. Further, the district court's post-trial identification of Maliske as the final policymaker cannot remedy the error already made. The jury can find liability on the part of the municipality only through the decisions of a final policymaker. Given no final policymaker whose decisions it could analyze, the jury rendered a verdict against the defendants that lacked a legally sufficient basis.

## III. Conclusion

A final policymaker may have deprived Soltesz of his constitutional rights in this case. But if Soltesz wishes to bring his claims to a jury, the district court must identify the final policymaker in accordance with South Dakota state law and local Rapid City ordinances. We therefore reverse the district court's ruling on the Civic Center's renewed motion for JMOL, vacate the jury's verdict, and remand for a new trial.

_____